UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYLLYTH QUILLAN,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CIGNA HEALTHCARE OF CALIFORNIA, INC., et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00989-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXPAND THE ADMINISTRATIVE RECORD AND FOR *DE NOVO* REVIEW**<br><br>Docket No. 42, 44 |

Plaintiff Lillyth Quillan ("Plaintiff") has filed the instant action against Defendants CIGNA Healthcare of California Inc. ("Cigna") and the Visa Inc. Cigna Network POS Plan (the "Defendant Plan") pursuant to the Employee Retirement Income Security Act ("ERISA"). According to Plaintiff, the Defendant Plan violated ERISA by denying her request for reimbursement for the cost of her artificial disc replacement ("ADR") procedure. Currently pending before the Court is a motion filed by Plaintiff in which she seeks the following relief: (1) a decision that the Court should review *de novo* (rather than for an abuse-of-discretion) the Defendant Plan's denial of her claim; and (2) a decision that the Administrative Record should be expanded to include seven medical studies regarding the ADR procedure. Having considered the parties' briefs, accompanying exhibits and oral arguments, the Court hereby **GRANTS** in part and **DENIES** in part the requested relief. More specifically, the Court shall review the Defendant Plan's denial of Plaintiff's claim *de novo* but it shall not expand the Administrative Record.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Plaintiff's Claim for Reimbursement

The instant action involves Plaintiff's attempt to have her ADR procedure covered under the Plan.  Plaintiff, who had pre-existing back problems, damaged her spine in a car accident in

2003.  *See* AR 139.  In April 2012, Dr. Talwar, one of Plaintiff's treating orthopedic surgeons, submitted a request to Cigna, the administrator of the Plan, seeking authorization to perform a one-level ADR surgery (as well as a one-level fusion).  *See* AR 20.  After Cigna denied authorization, Plaintiff appealed.  Cigna upheld its decision, explaining that, although "[t]here is documentation of multilevel degenerative disc disease[,] [t]his device cannot be approved because there is insufficient scientific long term evidence to demonstrate the safety and/or effectiveness of the implantation."  *See* AR 35.  Pursuant to the Knox-Keene Health Care Service Plan Act of 1975 (codified at California Health & Safety Code §§ 1340 to 1399.864), Plaintiff sought an independent medical review of the denied medical claim.  More specifically, Plaintiff filed an independent medical review request with the California Department of Managed Care ("DMHC") who delegated the task to MAXIMUS Federal Services, Inc. ("Maximus").  *See* AR 55, 57.  The Maximus reviewer concluded that "the requested procedure is not likely to be more beneficial for treatment of your medical condition than any available standard therapy."  *See* AR 58.  (If the review had been favorable to Plaintiff, then the Defendant Plan would have had to provide Plaintiff with the requested treatment.  *See* Cal. Health & Safety Code § 1374.34(a)).

In July 2012, Dr. Talwar submitted a request for a two-level fusion surgery with no ADR.  *See* AR 153.  However, it appears that Cigna did not take any action on this claim.  *See* Mot. at 9.

In March 2013, Plaintiff received the ADR surgery in Spain from a physician by the name of Dr. Clavel.  *See* AR 179-82.  Several months later, in September 2013, Plaintiff submitted to Cigna a claim for reimbursement for the Spain surgery.  *See* AR 4.  In February 2014, Cigna denied Plaintiff's claim concluding that medical necessity had not been established because of the absence of appropriate medical and hospital records from the hospital in Spain.  *See* Docket No. 48 (Notice, Ex. A) (denial letter).[1]  Plaintiff appealed Cigna's denial.  In April 2014, Cigna upheld its original decision.  *See* AR 255.

B.   The Plan

---

[1] Initially, neither party was able to locate a copy of this denial.  However, post-hearing, Plaintiff found the document and submitted it to the Court for its consideration.  The Defendant Plan has not contested the authenticity of the document.

2

The parties do not dispute that Plaintiff was a covered participant under the Plan and that Cigna is the administrator of the Plan. *See* Mot. at 3; Opp'n at 2. The parties also do not dispute (or at least do not seem to dispute) that the terms of the Plan require that a procedure be medically necessary in order for there to be coverage under the Plan.[2]

The parties, however, do have a fundamental disagreement about at least one term in the Plan – namely, whether the Plan grants Cigna, as the plan administrator, discretionary authority. If the Plan includes such a term, then the Court must evaluate Cigna's actions under an abuse-of-discretion review; if not, then the standard of review would be *de novo*. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The parties disagree as to whether the Plan includes a term on discretionary authority because they dispute what documents comprise the Plan. The Defendant Plan contends that the binding Plan documents are: (1) a document titled "Summary of Benefits for Active Employees" ("Summary") and (2) a document titled the "Cigna Healthcare of California, Inc. Face Sheet to the Cigna Healthcare Group Service Agreement" (the "Face Sheet"). *See* Opp'n at 2; Brown Decl. ¶ 3. While Plaintiff does not identify precisely what document she considers to be the Plan, she contends that the documents identified by the Defendant Plan are not Plan documents. According to Plaintiff, the Summary is not a binding Plan document but rather an informational summary of the actual plan document. *See* Mot. at 17. Plaintiff maintains that the Summary is akin to documents commonly known as Summary Plan Descriptions ("SPDs") which, at least in some cases, have expressly been deemed not to be Plan documents. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) (holding that summary documents provide beneficiaries with information about the plan but do not constitute the terms of the plan). As for the Face Sheet, Plaintiff asserts that it cannot be a binding Plan document because, *e.g.*, the Face Sheet, in and of itself, does not establish "the existence of 'a plan, fund, or program . . . for the purpose of providing medical, surgical, hospital care, [etc.] to participants or beneficiaries'" – indeed, the Face Sheets "says nothing about the rights or obligations of plan beneficiaries with respect to medical benefits."

---

[2] The Defendant Plan also contends that there is a Plan term providing that treatment abroad is not covered absent a medical emergency. *See* Opp'n at 2.

1  Mot. at 19.  Plaintiff also argues that, even if the Face Sheet could, in theory, be one of several

2  Plan documents, nothing on the face of the document indicates that it actually applies to the

3  specific Plan at issue as opposed to some other plan.  *See* Mot. at 19 (noting that "the Face Sheet

4  makes no reference to the Visa POS Plan," which is "important because Cigna has numerous

5  health plans, and a grant of discretion should set forth the plan to which it will apply").

## II.   DISCUSSION

### A.   De Novo Review

"[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115.  Notably, "[t]he burden is on the administrator to show that the plan gives it such discretionary authority." *Simkins v. NevadaCare, Inc.*, 229 F.3d 729, 733 (9th Cir. 2000).

In the instant case, there is no dispute that the Summary does not contain a term giving Cigna, as the plan administrator, discretionary authority.  Rather, the only document that contains such a term is the Face Sheet.  Given that fact, the Court need not address, for purposes of this opinion, whether the Summary is a Plan document and can focus instead on the issue of whether the Face Sheet is such a document.[3]

The Face Sheet provides as follows:

> The Plan Administrator (Employer) hereby delegates to Healthplan the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan.  Such discretionary authority is intended to include, but is not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the

---

[3] The Court does note, however, that Plaintiff's attempt to equate the Summary with a SPD is problematic given that the Summary expressly refers enrollees to another document called the SPD, *see* Summary at 3 – thus, by implication, the Summary cannot by a SPD.  *See* Summary at 3. Moreover, the Summary contains many of the required features specified in 29 U.S.C. § 1102(b) (providing that, as requisite features of a plan, every employee benefit plan shall "(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan," (2) "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan," (3) "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan," and (4) "specify the basis on which payments are made to and from the plan").

> determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator (Employer) also delegates to Healthplan the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.
>
> This language should be made a part of your Summary Plan Description.

Face Sheet at 7.

Plaintiff maintains that the Face Sheet cannot be a binding Plan document because, standing alone, it does not contain all the terms that a plan document is required to have and therefore cannot be enforced. *See*, *e.g.*, 29 U.S.C. § 1102(b). This argument lacks merit. As the Defendant Plan argued at the hearing, "ERISA does not require a single plan document and the plan document may incorporate other formal or informal documents." *Gilson v. Macy's, Inc. Long Term Disability Plan*, No. C 13-04520 WHA, 2014 WL 2129460, at *1 (N.D. Cal. May 22, 2014) (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985)). Furthermore, "there is no requirement that documents claimed to collectively form the employee benefit plan be formally labeled as such." *Horn v. Berdon, Inc. Defined Benefit Pension Plan*, 938 F.2d 125, 127 (9th Cir. 1991). Thus, contrary to what Plaintiff suggests, it is entirely possible that the Face Sheet along with the other documents can collectively comprise the Plan documents.

Plaintiff protests that, even if the Face Sheet combined with other documents could, in theory, be the binding Plan documents, there is still a problem that prevents the Face Sheet from being a Plan document here. More specifically, Plaintiff argues that, in order for the Defendant Plan to prevail, it must show that the Face Sheet actually applies to the specific Plan at issue, as opposed to one of the many other plans for which Cigna serves as a plan administrator. There is merit to this argument. As Plaintiff notes, nothing on the face of the Face Sheet makes a connection between the Face Sheet and the Plan at issue. The only evidence offered by the Defendant Plan is a declaration from a Plan employee, Karen Brown. That declaration is entirely conclusory; Ms. Brown simply states that the Face Sheet is one of the Plan documents without explaining how she arrived at that conclusion. Moreover, although Ms. Brown claims to have personal knowledge to arrive at that conclusion, nothing in her declaration explains the basis for

5

her claim of personal knowledge. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 (9th Cir. 2002) (holding that the district court properly disregarded the declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true). The fact that Ms. Brown is a Claims Specialist is not a sufficient basis to establish personal knowledge as to this issue. As a Claims Specialist, Ms. Brown may have considered the Face Sheet and, *e.g.*, the Summary in deciding whether to grant or deny a given claim but that does not establish that she is a person of sufficient authority within Cigna who can opine as to what the official Plan documents are. Indeed, the Plan sponsor – Visa – would seem to be in the best position to say what the binding Plan documents are. *See Amara*, 563 U.S. at 437 (holding "[t]he plan's sponsor . . . creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument 'a procedure' for making amendments"). Yet, nothing was submitted from Visa.

Accordingly, the Court concludes that the Defendant Plan has not met its burden of proving that the Face Sheet is a Plan document. Therefore, *de novo* review applies.

B.     Expansion of the Administrative Record

Plaintiff next asks that the Court expand the Administrative Record to include seven medical studies, each of which lends support to Plaintiff's position that the ADR procedure was medically necessary. Plaintiff has tendered various theories as to why the Administrative Record should be expanded: (1) because Cigna actually considered the seven studies in ruling on her claim; (2) because there was a procedural irregularity – *i.e.*, that she never received the initial denial letter from Cigna denying reimbursement for the Spain surgery – which deprived her of the ability to know exactly why her claim was denied and what she needed to do for her appeal (*i.e.*, had she known these things, she would have provided information similar to the seven studies during the appeal); and (3) because the inclusion of the seven studies is necessary for the Court to conduct an adequate *de novo* review. The Court does not find any of these arguments persuasive.

First, there is no evidence that Cigna ever considered any of the seven studies in ruling on Plaintiff's claim. While the Maximus reviewer did consider the seven studies (and the Maximus review is part of the Administrative Record), that does not mean that *Cigna* thereby considered the

seven studies. Cigna rendered its denial (*i.e.*, of the Dr. Talwar-proposed ADR) before the Maximus review ever took place. Moreover, Cigna was not required to take any action after the Maximus review (such as considering the review and the evidence cited therein) because the reviewer concluded that the ADR surgery was not "likely to be more beneficial for treatment of your medical condition than any available standard therapy." *See* AR 58; *see also* Cal. Health & Safety Code § 1374.34(a) (providing that, "[u]pon receiving the decision adopted by the director . . . that a disputed health care service *is* medically necessary, the plan shall promptly implement that decision") (emphasis added).

Second, Plaintiff's claim that there was a procedural irregularity is now moot.[4] The claim rested on Plaintiff's never having received an initial denial letter from Cigna (with respect to the claim for reimbursement for the Spain surgery). However, Plaintiff now admits that she received the initial denial letter – in fact, has provided a copy for the Court's consideration – and that letter on its face explains why the claim was denied and what needed to be done for appeal.

Third, Plaintiff's contention that the seven medical studies are necessary for an adequate *de novo* review fares no better than either of the arguments above. Admittedly, where a court applies *de novo* review, it can expand the administrative record in certain "exceptional" circumstances. *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007). For example, the Ninth Circuit has indicated that the "introduction of evidence beyond the administrative record could be considered necessary" in the following circumstances:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* But the circumstances must "'*clearly establish* that additional evidence is necessary to conduct

---

[4] The Court also notes that Plaintiff waived the argument by not making the argument in her opening brief and waiting to raise it, for the first time, as part of her reply.

7

an adequate *de novo* review of the benefit decision. In most cases, . . . additional evidence is not necessary for adequate review of the benefits decision.'" *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995) (emphasis added; quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993)). "A district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." *Mongeluzo*, 46 F.3d at 944. "[I]f the evidence is cumulative of what was presented to the plan administrator, or is simply better evidence that the claimant mustered for the claim review, then its admission is not necessary." *Quesinberry*, 987 F.2d at 1027.

According to Plaintiff, the seven medical studies are necessary for an adequate *de novo* review because Plaintiff's claim requires the consideration of a complex medical question, as evidenced by the competing opinions of various physicians – *e.g.*, (1) the Maximus reviewer and Dr. Mino, the Cigna doctor who denied Plaintiff's request for ADR treatment, both of whom indicated that ADR is not a safe, effective, or medically necessary treatment, and (2) Dr. Talwar and Dr. Clavel, both of whom determined that ADR was a medically necessary treatment for Plaintiff. *See* Mot. at 24 (stating that whether ADR was a safe and effective treatment for Plaintiff "is a complex medical issue on which the relevant experts differ"). But the fact that experts disagree does not in and of itself establish a complex medical issue. Indeed, if that were the case, the exception (*i.e.*, expansion of the administrative record only in exceptional circumstances) could routinely swallow the rule. Furthermore, the seven studies at best are simply better evidence regarding the safety and effectiveness of ADR in certain circumstances.

The circumstances where the administrative record has been expanded are materially different from the situation presented herein. For example, in *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1111 (9th Cir. 1999), the court admitted additional medical reports because the plan administrator had denied the plaintiff the ability to enter the medical reports into the administrative record during the review of his claim. Also, the administrative record only included medical records that were incomplete, illegible, and disorganized. *See id.* In *Mongeluzo*, 46 F.3d at 944, the court admitted the declaration of a doctor explaining the plaintiff's disability. The court

8

reasoned that a narrower definition of "mental illness" established in another case changed the "legal posture" and the additional evidence was needed in order properly evaluate the plaintiff's claim. *See id.*

Finally, it is worth noting that Plaintiff could easily have obtained the studies and submitted them in support of her claim for reimbursement for the Spain surgery because she had, at that point, the Maximus review which cited those studies. She did not. The Court is not persuaded that the administrative record should be expanded – at least in the circumstances of this case – when diligence on the part of Plaintiff could have created a better record.

Finally, to the extent Plaintiff now argues that the Court should expand the record to include the *Ponce De Leon* decision (both the court decision and the underlying arbitration decision), that argument has been waived, as Plaintiff brought it up for the first time at the hearing. The argument is problematic as well on the merits. It is inconsistent with Plaintiff's concession at the hearing that a document that is created *after* the plan administrator's decision cannot be considered. Furthermore, to the extent Plaintiff argues the Court should take judicial notice of the decision, this is not warranted. The Court cannot take judicial notice of the accuracy of another court's assessment of whether ADR is a preferable procedure over fusion surgery for purposes of deciding the merits.

Accordingly, the Court shall not expand the Administrative Record to include *Ponce De Leon* and, further, it grants the Defendant Plan's request to strike Plaintiff's request for judicial notice. *See* Docket No. 44 (motion to strike).

///
///
///
///
///
///
///
///

9

### III.  CONCLUSION

For the foregoing reasons, the Court shall review the Defendant Plan's decision *de novo* but shall not expand the Administrative Record.

This order disposes of Docket Nos. 42 and 44.

**IT IS SO ORDERED**.

Dated: April 14, 2016

_____
EDWARD M. CHEN
United States District Judge